UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE,<br><br>                                   Plaintiff,<br><br>v.<br><br>A&B EL CAJON HOTELS LLC,<br>a California limited liability<br>company,<br><br>                                   Defendant. | Case No.:  24-cv-1322-WQH-DEB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is Plaintiff's Motion for Default Judgment. (ECF No. 6.)

**I.    BACKGROUND**

On July 27, 2024, Plaintiff initiated this action by filing a Complaint against Defendant A&B El Cajon Hotels LLC ("Defendant"). (Compl., ECF No. 1.) Plaintiff brings three causes of action against Defendant for violating Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and its implementing regulations, and the California Unruh Civil Rights Act ("Unruh Act").

On September 2, 2024, Plaintiff filed a Notice of Service of Summons and Complaint. (ECF No. 3.)

On September 3, 2024, Plaintiff filed a Petition for Clerk to Enter Default. (ECF No. 4.) On September 4, 2024, the Clerk of the Court entered default against Defendant. (ECF No. 5.)

On September 11, 2024, Plaintiff filed the Motion for Default Judgment. (ECF No. 6.) The docket reflects that Defendant has not filed any document.

## II. BACKGROUND

Plaintiff alleges that Defendant "owns and/or operates and does business as the hotel Best Inn & Suites (the 'Hotel') located at 1274 Oakdale Avenue, El Cajon, California 92021," which is a public accommodation offering public lodging services. (Compl. ¶ 2) Plaintiff alleges that she is legally disabled and "ambulates with the aid of a wheelchair due to the loss of a leg." *Id.* ¶ 1. Plaintiff alleges that she is an "avid traveler across California for purposes of leisure travel and to 'test' whether various hotels comply with disability access laws, doing so at least once per month." *Id.* ¶ 11. Plaintiff alleges that:

> [i]n July 2024, Plaintiff personally visited Defendant's hotel, which has a parking lot and a passenger loading zone … located directly outside of the lobby entrance …
>
> While at Defendant's hotel, she discovered that Defendant's hotel has a barrier to entry to the lobby, which is that the passenger loading zone does not have an access aisle compliant with Section 503.3. It is an absolute requirement to have an access aisle at a passenger loading zone pursuant to Sections 209 and 503. The requirement of an access aisle at a passenger loading zone relates to Plaintiff's disability of not having one leg and being forced to use a wheelchair because access aisles are required so persons in a wheelchair can maneuver without threat of danger … The lobby, therefore, is inaccessible to Plaintiff by way of the passenger loading zone because there is no access aisle.
>
> Plaintiff also discovered a second barrier … the disabled parking spot at the Hotel did not have any accessible route from it to the Hotel's main entrance.
>
> … as a result, she was deterred from entering the hotel both from the barrier and due to the lack of equality.

> Plaintiff has certain plans of returning and staying at the Hotel in January 2025 … in the hopes that Defendant will have remediated the two barriers, but when she arrives then and Defendant has not remediated, she will remain deterred and will not enter the Hotel.

*Id.* ¶¶ 12–16.

Plaintiff asserts that this Court has subject matter jurisdiction over the ADA claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, and that the Court has supplemental jurisdiction over the California state law claim. *Id.* ¶¶ 3–6.

Plaintiff contends she is entitled to Default Judgment pursuant to Federal Rule of Civil Procedure 55(b). (ECF No. 6 at 4.) Plaintiff contends she is entitled to (1) a declaratory judgment stating that Defendant violated Title III of the ADA; (2) statutory damages; (3) injunctive relief directing Defendant to comply with Section 208.2.1 of the 2010 Standards of Accessible Design by providing an accessible route from its disabled parking spot to the Hotel's entrance; (4) injunctive relief directing Defendant to modify the Hotel to comply with Sections 209 and 503 of the 2010 Standards of Accessible Design by providing an access aisle at the Hotel's passenger loading zone; (5) an order closing the Hotel unless Defendant fully complies with the ADA requirements within 60 days of judgment in this action; and (6) costs of suit and attorney's fees. *Id.* at 2.

In her Complaint, Plaintiff seeks $8,000.00 in monetary damages and payment of costs and attorney's fees. (Compl. ¶ 38). In her Motion for Default Judgment, Plaintiff requests the Court enter judgment against Defendant in the amount of $8,000.00 in monetary damages, $5,550.00 in attorney's fees, and $450.00 in costs, for a total of $13,950.00. (*See* ECF No. 6 at 2.)

### III. DISCUSSION

#### A. Plaintiff's State Law Cause of Action

Plaintiff brings one cause of action under the Unruh Act. Cal. Civ. Code § 51 (West 2016). Plaintiff alleges that "Defendant has violated the Unruh [Act] by denying Plaintiff equal access to its public accommodation on the basis of her disability" and that "Plaintiff

has been damaged by the Defendant's non-compliance with Unruh." (Compl. ¶¶ 34, 36.) Plaintiff now seeks default judgment for her Unruh Act claim, requesting $4,000.00 in damages for each of Defendant's alleged violations (for a total of $8,000.00) pursuant to Cal. Civ. Code § 52 (West 2022). *Id.* ¶¶ 37–38.

The Court possesses only supplemental jurisdiction over Plaintiff's Unruh Act claim. *See* 28 U.S.C. § 1367(a). Thus, the Court now considers whether it has subject matter jurisdiction over Plaintiff's Unruh Act claim.

### 1) Legal Standard

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

In original jurisdiction actions, courts must exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c) provides exceptions, allowing a district court to decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The Supreme Court has held that considerations of judicial economy, convenience and fairness to the litigants, and comity, underlie a § 1367(c) inquiry and that if these factors are not present "a federal court should hesitate to exercise jurisdiction over state law claims." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

The Ninth Circuit has articulated that federal courts can decline to exercise supplemental jurisdiction after considering "a host of factors" "including the circumstances

1  of the particular case, the nature of the state law claims, the character of the governing state
2  law, and the relationship between the state and federal claims." *City of Chicago v. Int'l*
3  *Coll. of Surgeons*, 522 U.S. 156, 173 (1997). However, declining supplemental jurisdiction
4  "should be the exception, rather than the rule" and thus, when doing so, "the court must
5  identify the predicate that triggers the applicability of the category (the exceptional
6  circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values
7  are best served by declining jurisdiction in the particular case (the compelling reasons)."
8  *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 24 F.3d 1545, 1558
9  (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*,
10 533 F.3d 1087 (9th Cir. 2008).

### 2) Application

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." *Velez v. Il Fornaio (Am.) Corp.*, Case No. CV 3:18-1840 CAB (MDD), 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018). The heightened pleading requirements apply to actions involving a "construction-related accessibility claim"—including cases brought under the ADA. Cal. Civ. Code § 55.52(1), (6). The California Legislature's amendments require plaintiffs to meet several additional criteria for their claims to survive in state court, such as "stat[ing] facts sufficient to allow a reasonable person to identify the basis of the violation or violations supporting the claim," and verifying the complaint. Cal. Civ. Proc. Code § 425.50(a)–(b).

In 2015, the California Legislature imposed additional requirements for plaintiffs defined as "high frequency litigants" bringing claims under the Unruh Act. *See* Cal. Gov't Code § 70616.5; Cal. Civ. Proc. Code § 425.50(a)(4)(A). These provisions mandate an increased filing fee and define additional allegations that must be alleged by high-frequency litigants. Cal. Gov't Code § 70616.5; Cal. Civ. Proc. Code § 425.50(a)(4)(A).

Courts in this circuit have found that California's enactment of the heightened pleading standards and additional fees for claims brought under the Unruh Act, present

"exceptional circumstances" and "compelling reasons" that justify the Court's exercise of its discretion to decline supplemental jurisdiction under § 1367(c)(4). *See, e.g., Brooke v. Shelby Hosp. LLC*, No. 522CV00628JWHSHK, 2023 WL 5017996 (C.D. Cal. July 24, 2023); *Brooke v. Sai Ashish Inc.*, No. 121CV00967AWISAB, 2021 WL 4804220 (E.D. Cal. Oct. 14, 2021), *report and recommendation adopted*, No. 121CV00967AWISAB, 2022 WL 446676 (E.D. Cal. Feb. 14, 2022); *Brooke v. DHSM LLC*, No. 8:24-CV-00699-DOC-DFM, 2024 WL 3542566 (C.D. Cal. June 14, 2024); *Brooke v. Lee*, No. 821CV00753DOCDFMX, 2021 WL 4815202 (C.D. Cal. July 2, 2021); *Brooke v. Wesball LLC*, No. 821CV00757DOCDFMX, 2021 WL 4815205 (C.D. Cal. July 2, 2021); *Brooke v. IWF Hotel Hermosa LP*, No. CV 24-353-MWF(JCX), 2024 WL 1136405 (C.D. Cal. Feb. 15, 2024); *Brooke v. Five Stars Hosp. LLC*, No. 2:22-CV-08492-MCS-KS, 2022 WL 18397370 (C.D. Cal. Dec. 15, 2022); *Brooke v. Claremont Star LP*, No. 222CV02440MCSRAO, 2022 WL 2286473 (C.D. Cal. Apr. 26, 2022); *Brooke v. Ba Lax LLC*, No. 2:22-CV-03101-MCS-E, 2022 WL 17363068 (C.D. Cal. May 18, 2022); *Brooke v. Ma Amba LLC*, No. 8:24-CV-01241-FWS-DFM, 2024 WL 4003350 (C.D. Cal. July 29, 2024); *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025 (S.D. Cal. 2017); *Whitaker v. Eye Phone City*, No. CV 19-2872 DSF (JEM), 2020 WL 7065831 (C.D. Cal. Oct. 7, 2020); *Block v. California-Fresno Inv. Co.*, No. 1:22-CV-1419 JLT SAB, 2023 WL 8675398 (E.D. Cal. Dec. 15, 2023).

The Complaint does not explicitly identify Plaintiff as a "high-frequency litigant," as defined by Cal. Civ. Proc. Code § 425.55(b)(1) & (2). (*See generally* Compl.) However, Plaintiff identifies herself as a "tester" and the Court notes that in the twelve months prior to initiating this action, Plaintiff filed more than one hundred and fifty cases alleging disability discrimination in this and other courts.[1] Thus, the Court finds that, by definition, Plaintiff is a high-frequency litigant. *See* Cal. Civ. Proc. Code § 425.55(b)(1) (defining

---

[1] According to PACER, between July 27, 2023 and July 27, 2024, Plaintiff filed 168 civil actions.

"high-frequency litigant" as "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation").

Given the California Legislature's enactment of heightened pleading standards for Unruh Act claims brought under the ADA, along with the subsequent amendments addressing high-frequency litigants like Plaintiff, the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. The Court finds that allowing Plaintiff to evade California's heightened procedural requirements would run contrary to the California Legislature's goals and permit Plaintiff to forum-shop. *See Ma Amba LLC*, 2024 WL 4003350, at *3–4. Moreover, because this action has barely progressed beyond the pleading stage and Defendants have not appeared, federal-state comity outweighs concerns of judicial economy, convenience, or fairness to the litigants. *Cf. Arroyo v. Rosas*, 19 F.4th 1202, 1214–16 (9th Cir. 2021). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and accordingly dismisses it without prejudice.

**B. Plaintiff's Federal Law Causes of Action**

Plaintiff brings two causes of action under the ADA, 42 U.S.C. §§ 12101 et seq., and its implementing regulations. Plaintiff alleges that Defendant violates the ADA and its implementing regulations by failing to provide: (1) a disability access aisle for its hotel passenger loading zone and (2) an accessible route from the disabled parking spot to the Hotel's main entrance. Plaintiff now seeks default judgment for her claims under the ADA, requesting injunctive relief that directs "Defendant to take all steps necessary to bring its passenger loading zone and parking lot into full compliance with the requirements set forth in the ADA." (Compl. ¶ 38.)

**1) Legal Standard**

Rule 55(a) of the Federal Rules of Civil Procedure requires that the Clerk of the Court enter default "when a party against whom a judgment for affirmative relief is sought has

failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Rule 55(b)(2) provides that the court may grant a default judgment after default has been entered by the Clerk of the Court. Fed. R. Civ. P. 55(b)(2). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quotation omitted). The Ninth Circuit has instructed courts to consider the following factors when determining whether default judgment should be granted:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). A plaintiff must provide evidence of her damages, and the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 55(b)(2), 54(c).

### 2) Application

The Clerk of the Court has entered default against Defendant. The Court thus turns to the substance of Plaintiff's Motion for Default Judgment by considering the *Eitel* factors.

### i. Possibility of Prejudice to Plaintiff

The Court first considers the possibility of prejudice to Plaintiff if default judgment is not entered. "Potential prejudice to Plaintiffs favors granting a default judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). "Courts have found such prejudice when a defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek relief." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citing *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177).

Plaintiff would suffer prejudice if the Court does not enter a default judgment in her favor. Despite being served (*see* ECF No. 3), Defendant has not appeared in this action.

Without a default judgment, Plaintiff would be "forced to continue the litigation even though no party has filed an answer or a claim." *United States v. Approximately $194,752 in U.S. Currency*, No. C-11-1400 EMC, 2011 WL 3652509, at *3 (N.D. Cal. Aug. 19, 2011). Therefore, the first *Eitel* factor weighs in favor of granting default judgment.

### ii. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

Next, the Court considers the second and third *Eitel* factors, which look to whether a plaintiff's complaint sufficiently states a claim for relief. *Cal. Sec. Cans*, 238 F.Supp.2d at 1175. These two factors require the Court to consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *Danning v. Lavine*, 575 F.2d 1386, 1388 (9th Cir. 1978). Judgment by default cannot be entered if the complaint fails to state a claim. *See Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004). In completing this analysis, the Court accepts as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

#### a) Standing

As a threshold matter, the Court considers whether Plaintiff has standing to pursue her ADA claim. Plaintiff alleges that she was denied access to the Hotel and is deterred from returning in the future because of architectural barriers that Defendant has failed to remove and requests injunctive relief to remedy this discrimination. (Compl. ¶¶ 13–14, 17.)

"[W]here injunctive relief is sought, a plaintiff must demonstrate 'significant possibility of future harm.'" *Wesball LLC*, 2021 WL 4815205, at *3 (quoting *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)). "Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011).

Plaintiff states that she "has certain plans of returning and staying at the Hotel in January 2025" (Compl. ¶ 16; *see also* ECF No. 6-2 at 2 (stating that Plaintiff "want[s] to

actually stay at the Hotel, so [she] ha[s] [her] reservation to return to the Hotel on January 6, 2025 and will return for [her] reservation").) Therefore, Plaintiff has standing to seek injunctive relief.

### b) Plaintiff's Claims for Relief

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a claim under the ADA, a plaintiff must prove that (1) he or she has a disability, (2) the defendant operates, leases, or owns a place of public accommodation, and (3) the plaintiff was denied appropriate accommodations by the defendant because of his or her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

The ADA defines disability as "[a] physical or mental impairment that substantially limits one or more major life activities," including walking or standing. 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff alleges that she relies on a wheelchair for mobility. (Compl. ¶ 1.) Therefore, Plaintiff has sufficiently alleged that she is disabled under the ADA.

The ADA defines public accommodations to include service establishments such as hotels. 42 U.S.C. § 12181(7)(B); *see also DHSM LLC*, 2024 WL 3542566, at *3 (finding that a hotel is a place of public accommodation). Plaintiff alleges that Defendant owns and operates the Hotel. (Compl. ¶ 2.) Accepting these allegations as true, as the Court must, Plaintiff has established that Defendant owns a place of public accommodation. *See Fair Hous. of Marin*, 285 F.3d at 906.

Finally, Plaintiff has adequately alleged that due to architectural barriers, she has been denied appropriate accommodations by Defendant because of her disability and that the removal of these architectural barriers is readily achievable. Plaintiff alleges that Defendant has failed to provide (1) a disability access aisle for the Hotel passenger loading

zone and (2) an accessible route from the disabled parking spot to the Hotel's main entrance. (Compl. ¶¶ 7–8.) Plaintiff further alleges that "[i]t is readily achievable and inexpensive to modify the hotel to provide an access aisle and move a parking spot closer to the building entrance." *Id.* ¶ 17. Thus, the Court finds that Plaintiff has sufficiently alleged both of her causes of action under the ADA.

The second and third *Eitel* factors thus weigh in favor of granting default judgment.

### iii. Sum of Money at Stake in this Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Cal. Sec. Cans*, 238 F.Supp.2d at 1176. Here, because the state law claim has been dismissed, the monetary amount at stake is only Plaintiff's attorney's fees. This factor favors entry of default judgment because such an amount is not disproportional to the harm caused. *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted.").

### iv. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor "examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (citation and internal quotations omitted). Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). Here, for the reasons already stated, the Complaint is well-pled. Defendant has made no attempt to appear or challenge Plaintiff's claims since the Complaint was served on Defendant on September 2, 2024. Based upon these facts, a dispute concerning material facts is unlikely and this factor weighs in favor of entering default judgment.

///

///

### v. Default Due to Excusable Neglect?

The sixth *Eitel* factor—excusable neglect—considers factors such as "prejudice ..., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Here, there is no evidence that Defendant has failed to defend this action due to excusable neglect. Defendant was served with the Complaint (*see* ECF No. 3) and has failed to respond or otherwise defend itself in this action.[2] Thus, this factor weighs in favor of default judgment.

### vi. Strong Policy Underlying the Federal Rules of Civil Procedure

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the mere existence of Federal Rule of Civil Procedure 55(b) indicates that "this preference, standing alone, is not dispositive." *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996) ("Considering the strong preference of the Federal Rules of Civil Procedure to have decisions on the merits is problematic in a case such as this in which defendant has not even responded to plaintiff's original complaint.") (quotations omitted). Under Federal Rule of Civil Procedure 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Defendant's failure to answer Plaintiff's Complaint renders a decision on the merits impractical, if not impossible. Accordingly, this factor weighs in favor of granting default judgment.

The Court finds that all seven *Eitel* factors weigh in favor of granting default judgment.

### C. Remedies

---

[2] In fact, Plaintiff asserts that, "in discussions with Defendant's representative, Jay Patel, it advised that it had no intention of defending this case because the LLC (the 'Defendant') is a shell that is not liquid and will not satisfy any judgment." (ECF No. 6 at 3; *see also* ECF No. 6-1 at 4.)

In her Motion for Default Judgment, Plaintiff requests the following relief: (1) "[d]eclaratory relief that Defendant [violated] Title III of the Americans with Disabilities Act;" (2) "[i]njunctive relief ordering Defendant to paint an access aisle at the Hotel's passenger loading zone pursuant to Sections 209 and 503 of the 2010 Standards;" (3) "[i]njunctive relief ordering Defendant to modify the Hotel to place an accessible route from the disabled parking spot at the Hotel to the lobby entrance pursuant to Section 206.2.1 of the 2010 Standards;" (4) "[c]losure of the hotel if Defendant does not remediate the barrier alleged within 60 days of Judgment;" (5) "[d]amages in the amount of $8,000.00;" (6) "[a]ttorneys fees in the amount of $5,550.00;" and (6) "[c]osts in the amount of $450.00." (ECF No. 6 at 2.)

Pursuant to Rule 54 of the Federal Rules of Civil Procedure, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiff is required to prove all damages sought in the complaint. Allegations in the complaint as to the amount of damages are not entitled to an assumption of truth. *See TeleVideo Sys.*, 826 F.2d at 917–18. The Court can consider "declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable" when assessing whether "there is an adequate basis for the damages awarded in the default judgment." *Xerox Corp. v. Am. Mail Ctrs., Inc.*, Case No. SA CV 16-0042-DOC (KESx), 2016 WL 10834102, at *2 (C.D. Cal. Oct. 14, 2016) (quoted citation omitted).

### 1) Declaratory and Injunctive Relief

Plaintiff seeks declaratory and injunctive relief under the ADA. "In the case of violations [of the accessibility provisions] of [the ADA], injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities ...." 42 U.S.C. § 12188(a)(2). Plaintiff need not satisfy the other prerequisites generally needed for injunctive relief. *See Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.") (citations and quotations omitted).

Declaratory and injunctive relief are proper here, as the Court has found Plaintiff has pleaded valid claims under the ADA and that the Hotel can readily (1) paint an access aisle at the Hotel's passenger loading zone and (2) move the disabled parking spots to be the shortest distance from the Hotel's main entrance.

### 2) Closure of the Hotel

Plaintiff requests that the Court order Defendant's hotel be closed if Defendant fails to remediate the barriers within sixty days. (ECF No. 6 at 2.) As previously discussed, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). This request was not made in Plaintiff's original Complaint and, thus, Defendant was not on notice that this remedy would be requested. Additionally, courts have found that, "such a draconian order is not authorized by the ADA," nor is it appropriate when there is no evidence that Defendant has previously violated the ADA. *Brooke v. Greens (Miramar) Inc.*, No. 20-CV-01899-BAS-BLM, 2021 WL 12183418, at *4 (S.D. Cal. Apr. 13, 2021).

Accordingly, the Court denies Plaintiff's request to order the closure of the Hotel should Defendant fail to remediate the barriers.

### 3) Damages

Plaintiff also seeks statutory damages in the amount of $8,000.00. However, "[d]amages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). Since the Court has dismissed Plaintiff's Unruh Act claim and only her ADA claims remain, Plaintiff is not entitled to monetary damages.

### 4) Attorney's Fees & Costs

Lastly, Plaintiff seeks attorney's fees and reasonable costs. The ADA contains a fee-shifting provision allowing the prevailing party to recover a reasonable attorney's fee and costs. 42 U.S.C. § 12205 (1990).

Plaintiff requests $450.00 in costs for the filing fee and service of process, which the Court finds reasonable.

Plaintiff requests $5,500.00 in attorney's fees. Plaintiff's counsel, Peter Strojnik ("Mr. Strojnik"), reports that his "billing rate for ADA related work is $750.00 per hour" and that he spent a total of 7.4 hours of time on this action, as described in the following table:

| Event | Time | Amount |
| --- | --- | --- |
| Rule 11 verification of barriers encountered by client. | 02.00 | $1,500.00 |
| Determine ownership of property and cross-reference with other title and county resources. | 01.00 | $750.00 |
| Draft Complaint and other initiating documents. | 02.20 | $1,650.00 |
| Review Judge chambers pages and referenced rules and procedures. | 00.40 | $300.00 |
| Draft and file Petition for Entry of Default. | 00.40 | $300.00 |
| Email to Defendant in attempt to advise of petition for default. | 00.20 | $150.00 |
| Telephonic discussion with Defendant. | 00.20 | $150.00 |
| Research and preparation of Motion for Default Judgment. | 01.00 | $750.00 |
| TOTALS | 7.40 | $5,500.00 |

(ECF No. 6-1 at 3–4.)

"[C]ourts generally apply the lodestar method to determine what constitutes a reasonable attorney fee[.]" *Bravo v. City of Santa Maria*, 810 F.3d 659, 665–66 (9th Cir. 2016). In applying the lodestar method, "a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

   i. **Time Expended**

A fee applicant "bears the burden of ... documenting the appropriate hours expended." *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007).

The Court finds that 7.40 hours is a reasonable amount of time billed for the present action, given Mr. Strojnik's documentation of the time expended. *See Shelby Hosp. LLC*, 2023 WL 5017996, at *5 (finding that "seven hours is a reasonable amount of time billed" by Mr. Strojnik when representing Plaintiff in a similar action).

### ii. Hourly Rate

When calculating a reasonable hourly rate, "the court must compute the fee award using an hourly rate that is based on the prevailing market in the relevant community." *Gonzales v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013). "The relevant community is that in which the district court sits." *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 978 (S.D. Cal. 2014) (quoting *Weeks v. Kellogg Co.*, No. CV 09-08102(MMM) (RZx), 2013 WL 6531177, at *32 (C.D. Cal. Nov. 23, 2013)). The prevailing market rate for attorneys of comparable experience, skill, and reputation controls this determination. *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006). "If the party seeking attorneys' fees fails to meet its burden, the court may exercise discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Arias v. Ford Motor Co.*, Case No. CV-18-1928 PSG, 2020 WL 1940843, at *3 (C.D. Cal. Jan. 27, 2020).

Plaintiff requests a billing rate of $750.00 per hour based upon Mr. Strojnik's experience and qualifications. Mr. Strojnik reports that this billing rate "is a fair rate for attorneys with similar experience and expertise in this very nuanced area of law." (ECF No. 6-1 at 3 (emphasis removed).) Other Courts have found "Strojnik's rate of $750 is excessive for a lawyer disbarred in Arizona and sanctioned as a vexatious litigant in the Central District of California." *Shelby Hosp. LLC*, 2023 WL 5017996, at *5 (citing *Strojnik v. Hyatt Hotels Corp.*, No. CV-21-00741-PHX-DWL, 2022 WL 504480, at *1 (D. Ariz. Feb. 18, 2022); *Strojnik v. SCG Am. Constr. Inc.*, No. SACV 19-1560 JVS (JDE), 2020 WL 4258814, at *8 (C.D. Cal. Apr. 19, 2020)).

  Courts in other districts in the Ninth Circuit have reduced Mr. Strojnik's rate from $750.00 per hour to $250.00 per hour. *See, e.g.*, *Shelby Hosp. LLC*, 2023 WL 5017996, at *5 (finding that "$250 per hour is more than reasonable for Strojnik's attorneys' fees"); *Brooke v. C & S Chong Inv. Corp.*, No. 117CV01583LJOJLT, 2018 WL 1704628, at *9 (E.D. Cal. Apr. 9, 2018) (reasoning that $250 per hour was appropriate, "[c]onsidering skill, reputation, and the eleven years of experience possessed by Mr. Strojnik"); *Brooke v. Patel*, No. 118CV00444LJOSAB, 2018 WL 3414144, at *8 (E.D. Cal. July 12, 2018) (holding that "$250.00 is a reasonably hourly rate for Mr. Strojnik based upon his experience of 11 years litigating civil rights cases, with a primary focus in ADA litigation"); *Brooke v. S.A.V. Tex., LLC*, No. 2:18-CV-1252-TLN-EFB, 2018 WL 4907967, at *3 (E.D. Cal. Oct. 10, 2018) (finding $250 per hour to be an appropriate amount).

  In the Southern District of California, Mr. Strojnik's fee has previously been reduced to $350.00 per hour. *Greens (Miramar) Inc.*, 2021 WL 12183418, at *4 (finding that "$350/hour is reasonable for an attorney of Mr. Strojnik's level of experience handling an ADA matter"). In view of the nature of this case, the level of skill and effort required, and Mr. Strojnik's record, the Court finds that $350.00 per hour is reasonable for Mr. Strojnik's attorney's fees. Accordingly, Plaintiff shall be awarded $2,590.00 in attorney's fees and $450.00 in costs.

### IV. CONCLUSION

  IT IS HEREBY ORDERED that Plaintiff's Motion for Default Judgment (ECF No. 6) is granted in part and denied in part.

  The Court GRANTS Plaintiff's request for declaratory and injunctive relief to the extent Plaintiff requests that this Court find Defendant has violated the ADA. Defendant is ordered to provide an access aisle at the Hotel's passenger loading zone and an accessible route from the disabled parking spot to the Hotel lobby entrance, compliant with Sections 208.21, 209, and 503 of the 2010 Standards of Accessible Design.

1  | The Court DENIES Plaintiff's request for injunctive relief to the extent she requests this
2  | Court order Defendant's hotel closed if Defendant does not comply with this Order within
3  | 60 days.
4  |     The Court DISMISSES Plaintiff's Unruh Act claim without prejudice subject to refiling
5  | in state court.
6  |     The Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendant
7  | in the amount of $3,040.00, which constitutes $2,590.00 in attorney's fees and $450.00 in
8  | costs.

Dated:  January 20, 2025

*[signature]*
Hon. William Q. Hayes
United States District Court